# *IN THE SUPREME COURT, STATE OF WYOMING*

## 2023 WY 17

*October Term, A.D. 2022*

February 15, 2023

BOARD OF PROFESSIONAL
RESPONSIBILITY, WYOMING
STATE BAR,

Petitioner,

v.

CASANDRA A. CRAVEN, WSB
#7-5664,

Respondent.

D-23-0001

## ORDER OF PUBLIC CENSURE

[¶1]    **This matter** came before the Court upon a Report and Recommendation for Public Censure, filed herein January 30, 2023, by the Board of Professional Responsibility for the Wyoming State Bar, pursuant to Rule 12 of the Wyoming Rules of Disciplinary Procedure (Stipulated Discipline).  The Court, after a careful review of the Board of Professional Responsibility's Report and Recommendation and the file, finds that the Report and Recommendation should be approved, confirmed, and adopted by the Court, and that Respondent Casandra A. Craven should be publicly censured for her conduct.  It is, therefore,

[¶2]    **ADJUDGED AND ORDERED** that the Board of Professional Responsibility's Report and Recommendation for Public Censure, which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further

[¶3]    **ADJUDGED AND ORDERED** that Casandra A. Craven is hereby publicly censured for her conduct, which is described in the Report and Recommendation for Public Censure.  The Wyoming State Bar may issue a press release consistent with the one set out in the Report and Recommendation for Public Censure; and it is further

[¶4]     **ORDERED** that, pursuant to Rule 25 of the Wyoming Rules of Disciplinary Procedure, Ms. Craven shall reimburse the Wyoming State Bar the amount of $50.00, representing the costs incurred in handling this matter, as well as pay the administrative fee of $750.00.  Ms. Craven shall pay the total amount of $800.00 to the Wyoming State Bar on or before March 31, 2023.  If Ms. Craven fails to make payment in the time allotted, execution may issue on the award; and it is further

[¶5]     **ORDERED** that the Clerk of this Court shall docket this Order of Public Censure, along with the incorporated Report and Recommendation for Public Censure, as a matter coming regularly before this Court as a public record; and it is further

[¶6]     **ORDERED** that, pursuant to Rule 9(b) of the Wyoming Rules of Disciplinary Procedure, this Order of Public Censure, along with the incorporated Report and Recommendation for Public Censure, shall be published in the Wyoming Reporter and the Pacific Reporter; and it is further

[¶7]     **ORDERED** that the Clerk of this Court cause a copy of this Order of Public Censure to be served upon Respondent Casandra A. Craven.

[¶8]     **DATED** this 15th day of February, 2023.

                                                  **BY THE COURT:**

                                                  /s/

                                                  **KATE M. FOX**
                                                  **Chief Justice**

BEFORE THE SUPREME COURT

STATE OF WYOMING

**D-23-0001**

IN THE SUPREME COURT
STATE OF WYOMING
FILED

JAN 3 0 2023

SHAWNA GOETZ, CLERK

by CHIEF DEPUTY

| | | |
|---|---|---|
| *In the matter of* | ) | |
| *Casandra A. Craven* | ) | |
| *WSB # 7-5664,* | ) | *WSB No. 2021-080* |
| | ) | |
| | ) | |
| *Respondent.* | ) | |

## REPORT AND RECOMMENDATION FOR PUBLIC CENSURE

THIS MATTER came before a Review Panel of the Board of Professional Responsibility via telephone conference call on the 16ᵗʰ day of January, 2023, for consideration of the parties' Stipulation for Public Censure pursuant to Rules 9 and 12 of the Wyoming Rules of Disciplinary Procedure. Present on the call were Review Panel members Katherine A. Strike (Chair), Robert C. Jarosh and Tandy Dockery. Melinda S. McCorkle, Deputy Bar Counsel, appeared on behalf of the Wyoming State Bar. Respondent Casandra A. Craven appeared on her own behalf. The Review Panel having reviewed the Stipulation, the supporting Affidavit and being fully advised in the premises, finds, concludes and recommends:

### Findings of Fact

1. Respondent has been licensed to practice law in Wyoming since 2016. Respondent is a sole practitioner in Cheyenne, Wyoming.

2. The present case stems from Respondent's representation of the Complainant[1] in two criminal matters, a divorce, and a protection order proceeding.[2]

---

[1] Due to the nature of the information revealed about Complainant, Complainant's name is not revealed in these documents.

[2] Little work was performed on the protection order, none of which is the subject of the Complainant's Complaint.

3.      In 2019, Respondent held a public defender contract and was appointed to represent Complainant in two criminal matters. Respondent did not renew her public defender contract but chose to complete Complainant's criminal matters on a *pro bono* basis.

4.      While the criminal cases were ongoing, Respondent agreed to represent Complainant in divorce and protection order proceedings for a flat fee of $7,000.00. Complainant paid $3,000.00 in October 2019 and paid the remaining $4,000.00 on January 2, 2020.

5.      Complainant's expectation was that the divorce action would be immediately filed. Below is a summary of written communications3, all via text, between Complainant and Respondent between January and March 2020:

- January 13, 2020: Complainant asked whether Husband had been served divorce papers. Respondent told Complainant that she was finalizing the papers which "should go out tomorrow."
- January 16, 2020: Complainant asked whether Husband was served.
- January 18, 2020: Respondent stated that she had not yet heard from the process server and would follow up with the process server the following week.
- January 24, 2020: Complainant asked for a copy of the divorce papers. Respondent replied that she would provide them.
- January 31, 2020: Complainant asked again whether Husband had been served.
- February 4, 2020: Respondent informed Complainant that the process server was having difficulty serving Husband and requested information about addresses and best times to serve Husband.
- February 5, 2020: Complainant stated, "Hi.I went down to court house to get a copy of divorce papers and they said there was nothing on file. I'm hoping this was a mistake?" Respondent did not directly respond to this statement but asked whether Complainant had provided photographs of her "injuries, house etc?"
- February 18, 2020: Complainant asked whether Respondent had an update about discovery or "divorce servings". Respondent asked Complainant to meet so that she can provide Complainant with all documents.
- February 19, 2020: Complainant asked again whether Husband was served. Complainant also asked whether Respondent received pictures of Husband's injury and damage to home.

---

3 It is unclear whether some of the communications relate to the criminal cases, divorce case or protection order matters.

- March 3, 2020: Complainant asked whether Respondent sent the divorce papers to her. Respondent stated, "Yes I believe my assistant did. I will followup to ensure."

6.　At the time of the text messages in January and early February 2020, Respondent believed that the divorce paperwork was filed and had learned from Respondent's staff that the process server was unable to serve Husband. Upon learning from Complainant that the divorce complaint had not been filed, Respondent contacted the Clerk's office and spoke with her staff regarding the filing. Respondent learned that her staff had not filed the paperwork before attempting service.4 Respondent then spoke with Complainant and apologized for the miscommunication.

7.　The parties' versions of verbal communications between Respondent and Complainant are somewhat at odds. According to Respondent, Respondent and Complainant had conversations in February and March 2020, in which Complainant stated that she did not want to file for divorce. After Respondent informed Complainant that the divorce had not been filed, Complainant stated that she was considering not proceeding with the divorce at all because she was facing significant health issues and may need Husband's medical insurance and financial support. They decided not to file the divorce until Complainant told Respondent to file. Respondent and Complainant had similar conversations on February 10 and 20, 2020 regarding Complainant's desire to wait on the divorce filing due to health issues.

8.　Although Respondent asserts that Complainant's continued desire was to hold off on filing the divorce and Complainant was aware that the divorce had not been filed, this explanation is contrary to Complainant's repeated written inquiries about the status of the divorce and whether Husband had been served. The text messages from Complainant make it

---

4 Respondent later terminated her staff for mistakes such as the failure to file the divorce paperwork.

3

clear that Complainant's understanding was that the divorce had been filed, and even if she became aware in early to mid-February 2020 that the divorce had not been filed, her expectation was that the divorce was proceeding accordingly.

9. On June 6, 2020, Complainant texted Respondent regarding the divorce, stating, "Right now I want this [criminal] trial done.5 I don't care about a divorce until I get my life back."

10. There was no further discussion about the divorce until September 2020. Complainant spoke with Respondent on September 9, 2020, and voiced concerns about the delay in her criminal trial6, concerns that she had not received any paperwork pertaining to her divorce, and updating Respondent regarding her health issues. On September 29, 2020, Complainant informed Respondent that she wished to postpone the divorce and requested a refund:

> Cassie I need to get with you. I need to postpone my divorce and get refunded the 7000.00 that I paid you. I need to have major surgery and my funds have ran out due to the delays in my court case. Please let me know how soon this can happen? Thank you!

11. Respondent told Complainant that she would not refund any portion of the fee because the $7,000.00 paid was a flat fee. On September 30, 2020, Complainant reiterated that Respondent should not keep the fee because she was hired to handle Complainant's divorce but never even filed the divorce action. Complainant also told Respondent that she no longer wished to be represented by Respondent. Respondent again refused to return any portion of the fee, stating, "Work has been completed and it is a flat fee agreement....The divorce was completely drafted and investigated and you told me not to file due to your health issues."

---

5 The criminal cases were delayed due to Covid-19.
6 Criminal case delays are not the subject of the Complaint or disciplinary action.

4

12. Complainant had no further communication with Respondent. On October 1, 2020, Complainant requested that a public defender be appointed to her criminal cases, who was appointed in November 2020.

13. On October 5, 2020, Respondent filed her *Motion to Withdraw as Counsel for Defendant7*. The *Motion* revealed a significant amount of confidential and harmful information relating to the representation that was neither required nor necessary for the withdrawal. Of note are the following statements:

- The Defendant in this matter terminated undersigned counsel after a series of disagreements regarding this case and the Defendant's performance on bond.

- The Defendant suffers from extreme mental health problems and memory loss which is exasperated by her age and drinking problem. This combination of factors has led to a downward deterioration in the client-attorney relationship. Despite undersigned counsel's best efforts, this could not be repaired.

- Without conveying attorney-client privileged communications, undersigned counsel can represent to this Court that in addition to the mandatory withdrawal applicable as described above, discretionary grounds also exist including " ... the client insists upon taking action that the lawyer considers repugnant or with which the lawyer has a fundamental disagreement..." W.R.P.C. 1.16(b)(4). One such example includes the Defendant's constant calls to the District Attorney's Office to harass Ms. Leigh Anne Manlove so she can call her expletives. Another such example includes calls and texts to undersigned counsel in the middle of the night when Defendant appears to be under the influence.

- The Defendant has discharged undersigned counsel, in which case withdrawal is mandatory pursuant to the rules. However, additional discretionary grounds do exist for the Court's consideration. *See WR.P.C. 1.16.*

Respondent was granted leave to withdraw from the criminal case.

14. On August 23, 2021, Complainant filed her Complaint Before the Board of Professional Responsibility. After the Complaint was filed but without prompting, Respondent voluntarily refunded the entire fee paid by Complainant. Respondent had previously terminated

---

7 Respondent filed this *Motion* in the criminal case only. The protection order issue was previously resolved. The divorce action had not been filed.

the staff member responsible for failing to file the divorce complaint. These remedial measures are significant and were considered when determining whether to allege violations of Rule 1.5 (fees) or 5.3(b) (responsibilities regarding nonlawyer assistance). Further, voluntarily refunding the entire fee is a significant mitigating factor.

15. Respondent has conditionally admitted that her conduct as set forth above violated Rule 1.3 (diligence) of the Wyoming Rules of Professional Conduct because she failed to file the divorce complaint despite Complainant's repeated inquiries regarding whether the divorce had been filed, whether Husband had been served, and the status of the divorce. Respondent never did file the divorce action.

16. Respondent has conditionally admitted that her conduct as set forth above violated Rule 1.6 (confidentiality of information) of the Wyoming Rules of Professional Conduct because Respondent revealed confidential information relating to the representation8 of Complainant. Complainant did not authorize the disclosure of the confidential information stated in the filed *Motion to Withdraw as Counsel for Defendant*, was not impliedly authorized to disclose the information, was not asked or compelled by the District Court to disclose this information, and none of the exceptions in Rule 1.6(b) allow Respondent's disclosure of confidential information to the Court or opposing counsel.

17. Respondent has conditionally admitted that her conduct as set forth above violated Rule 1.16(d) (declining or terminating representation) of the Wyoming Rules of Professional Conduct because Respondent made numerous statements in the *Motion to Withdraw as Counsel for Defendant* that were harmful or potentially harmful to Complainant.

---

8 Respondent's *Motion* stated that she did not want to convey attorney-client privileged communications, but she nonetheless revealed confidential information related to representation. The prohibition in W.R.Prof.Cond. 1.6 against revealing confidential information related to the representation of a client is far broader than attorney-client communications.

6

18. The rules violations to which Respondent has conditionally admitted are supported by clear and convincing evidence in the record before the Review Panel.

19. Respondent's failure to act with reasonable diligence in representing Complainant caused injury or potential injury to Complainant.

20. The parties agree, and the Review Panel so finds, that Respondent knowingly revealed confidential information relating to the representation of Complainant in her *Motion to Withdraw as Counsel for Defendant*. While it does not appear that the information caused injury to Complainant's criminal case, the disclosure could have caused injury to Complainant's cases and were generally injurious statements which are now publicly available.

21. Although Complainant terminated Respondent's representation, the parties agree, and the Review Panel so finds, that the information revealed by Respondent upon termination caused potential injury to Complainant because of the nature of the information revealed.

22. The parties agree, and review so finds, that Respondent acted with knowledge with respect to conduct in violation of the Rules of Professional Conduct.

23. The parties agree, and the Review Panel so finds, that Respondent's conduct resulted in potential injury to a client.

24. In Respondent's case, multiple offenses are an aggravating factor. Mitigating factors include the absence of a prior disciplinary record, absence of a dishonest or selfish motive, timely good faith effort to make restitution or to rectify consequences of misconduct, full and free disclosure to disciplinary board or cooperative attitude toward proceedings, and remorse.

7

25. In consideration of Respondent's misconduct as well as the significant mitigating factors present in the case, the Review Panel finds that a public censure is the appropriate sanction in this case.

26. If the Court issues an Order of Public Censure in accordance herewith, Deputy Bar Counsel and Respondent agree to the following press release:

The Wyoming Supreme Court issued an order of public censure to Cheyenne attorney Casandra A. Craven. The public censure stemmed from Craven's lack of diligence in representing a client (Rule 1.3) and revealing harmful confidential information relating to the representation of client in a motion to the Court requesting permission to withdraw from the case (Rule 1.6 and 1.16(d)). Craven represented Complainant in a criminal action and was hired to file for divorce on behalf of the client. Craven delayed filing a divorce action for several months despite client's repeated requests regarding the status of the case and inquiring as to whether her husband had been served with the divorce papers. Approximately nine months later, the divorce action had not been filed and client informed Craven that she was terminating Craven's representation in all actions. Upon termination, Craven filed a motion to withdraw from the criminal case. The *Motion* revealed a significant amount of confidential and harmful information that was neither required nor necessary for the withdrawal. Following commencement of a disciplinary investigation by the Office of Bar Counsel, Craven admitted that the failure to file the divorce complaint violated Rule 1.3 (diligence). Craven further admitted that the information stated in the *Motion to Withdraw* was confidential information related to the representation of the client which was harmful or potentially harmful to the client; as such, she violated Rules 1.6 and 1.16(d). Craven voluntarily and without request from the Office of Bar Counsel refunded all fees paid by the client. In determining that a public censure is the appropriate sanction for Craven's violations, the Court gave due consideration to several mitigating factors present in the case, including the absence of a prior disciplinary record, absence of a dishonest or selfish motive, timely good faith effort to make restitution or to rectify consequences of misconduct, full and free disclosure to the disciplinary board, cooperative attitude toward proceedings, and remorse. In approving the stipulation of Craven and Deputy Bar Counsel for a public censure as the appropriate sanction for Craven's misconduct, the Court ordered Craven to pay an administrative fee in the amount of $750.00 and costs of $50.00 to the Wyoming State Bar.

## Conclusions of Law

27. Rule 1.3, W.R.Prof.Cond. (Diligence), states, "A lawyer shall act with reasonable diligence and promptness in representing a client."

8

28.    Rule 1.6, W.R.Prof.Cond., states:

Rule 1.6. Confidentiality of information.

(a)    A lawyer shall not reveal confidential information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b).

(b)    A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:

(1) to prevent the client from committing a criminal act;

(2) to prevent the client from committing a fraud that is reasonably certain to result in substantial injury to the financial interests or property of another and in furtherance of which the client has used or is using the lawyer's services;

(3) to prevent, mitigate or rectify substantial injury to the financial interests or property of another that is reasonably certain to result or has resulted from the client's commission of a crime or fraud in furtherance of which the client has used the lawyer's services;

(4) to secure legal advice about the lawyer's compliance with these Rules;

(5) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client;

(6) to comply with other law or a court order;

(7) to detect and resolve conflicts of interest arising from the lawyer's change of employment or from changes in the composition or ownership of a firm, but only if the revealed information would not compromise the attorney-client privilege or otherwise prejudice the client; or

(8) to protect the best interests of an individual when the lawyer has been appointed to act as a guardian ad litem.

29.    Rule 1.16, W.R.Prof.Cond., state in pertinent part states in pertinent part:

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable

9

notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by Rule 1.15A or other law.

Comment [3] to Rule 1.16 states:

When a lawyer has been appointed to represent a client, withdrawal ordinarily requires approval of the appointing authority. See also Rule 6.2. Similarly, court approval or notice to the court is often required by applicable law before a lawyer withdraws from pending litigation. See Rule 102, Uniform Rules for District Courts of the State of Wyoming. Difficulty may be encountered if withdrawal is based on the client's demand that the lawyer engage in unprofessional conduct. The court may request an explanation for the withdrawal, while the lawyer may be bound to keep confidential the facts that would constitute such an explanation. The lawyer's statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient. Lawyers should be mindful of their obligations to both clients and the court under Rules 1.6 and 3.3.

30. Rule 15(b)(3)(D), W.R.D.P., provides, "In imposing a sanction after a finding of misconduct by the respondent, the BPR shall consider the following factors, as enumerated in the ABA Standards for Imposing Lawyer Sanctions:"

1. Whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession;
2. Whether the lawyer acted intentionally, knowingly, or negligently;
3. The amount of the actual or potential injury caused by the lawyer's misconduct; and
4. The existence of any aggravating or mitigating factors.

31. First Factor: The Duty Violated. Violations of Rule 1.3 fall under Standard 4.4, "Lack of Diligence," of the ABA Standards. Standard 4.4 sets forth the following guidelines:

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving improper revelation of information relating to representation of a client:

4.41 Disbarment is generally appropriate when:
(a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or
(b) a lawyer knowingly fails to perform services for a client and cause serious or potentially serious injury to a client; or

10

(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

4.42　Suspension is generally appropriate when:
(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or
(b) a lawyer engages in a pattern of neglect with respect to client matters and causes injury or potential injury to a client.

4.43　Reprimand [i.e., "public censure" under Rule 9(a)(3) of the Rules of Disciplinary Procedure] is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.

4.44　Admonition [i.e., "private reprimand" under Rule 9(a)(4) of the Rules of Disciplinary Procedure] is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes little or no actual or potential injury to a client.

32.　Violations of Rule 1.6 fall under Standard 4.2, "Failure to Preserve the Client's Confidences," which provides:

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving improper revelation of information relating to representation of a client:

4.21　Disbarment is generally appropriate when a lawyer, with the intent to benefit the lawyer or another, knowingly reveals information relating to the representation of a client not otherwise lawfully permitted to be disclosed, and this dis-closure causes injury or potential injury to a client.

4.22　Suspension is generally appropriate when a lawyer knowingly reveals information relating to the representation of a client not otherwise lawfully permitted to be disclosed, and this disclosure causes injury or potential injury to a client.

4.23　Reprimand [i.e., "public censure" under Rule 9(a)(3) of the Rules of Disciplinary Procedure] is generally appropriate when a lawyer negligently reveals information relating to representation of a client not otherwise lawfully permitted to be disclosed and this disclosure causes injury or potential injury to a client.

4.24　Admonition [i.e., "private reprimand" under Rule 9(a)(4) of the Rules of Disciplinary Procedure] is generally appropriate when a lawyer engages in any other conduct that reflects adversely on the lawyer's fitness to practice law.

33.　Violations of Rule 1.16 (declining or terminating representation) fall within Standard 7.0, which provides:

11

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving false or misleading communication about the lawyer or the lawyer's services, improper communication of fields of practice, improper solicitation of professional employment from a prospective client, unreasonable or improper fees, unauthorized practice of law, improper withdrawal from misrepresentation, or failure to report professional misconduct.

7.1     Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public or the legal system.

7.2     Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.

7.3     Reprimand [i.e., "public censure" under Rule 9(a)(3) of the Rules of Disciplinary Procedure] is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.

7.4     Admonition [i.e., "private reprimand" under Rule 9(a)(4) of the Rules of Disciplinary Procedure] is generally appropriate when a lawyer engages in an isolated instance of negligence that is a violation of a duty owed as a professional, and causes little or no actual or potential injury to a client, the public, or the legal system.

34.     Second Factor:  The Lawyer's Mental State.  The Preface to the ABA Standards includes the following discussion regarding mental state:

The mental states used in this model are defined as follows.  The most culpable mental state is that of intent, when the lawyer acts with the conscious objective or purpose to accomplish a particular result.  The next most culpable mental state is that of knowledge, when the lawyer acts with conscious awareness of the nature or attendant circumstances of his or her conduct both without the conscious objective or purpose to accomplish a particular result.  The least culpable mental state is negligence, when a lawyer fails to be aware of a substantial risk that circumstances exist or that a result will follow, which failure is a deviation of a care that a reasonable lawyer would exercise in the situation.

35.     Third Factor: Actual or Potential Injury.  Under the ABA Standards, "injury" is defined as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct.  The level of injury can range from 'serious' injury to 'little or no' injury; a

12

reference to 'injury' alone indicates any level of injury greater than 'little or no' injury."

"Potential injury" is defined as "harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct."

36.     Fourth Factor: Aggravating and Mitigating Factors.  ABA Standard 9.0, entitled "Aggravation and Mitigation," provides as follows:

9.1     *Generally*
After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.
9.2     *Aggravation*
9.21    *Definition.* Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.
9.22    *Factors which may be considered in aggravation.* Aggravating factors include:
(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
(e)  bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of the victim;
(i)  substantial experience in the practice of law;
(j)  indifference in making restitution; and
(k)  illegal conduct, including that involving the use of controlled substances.
9.3     *Mitigation.*
9.31    *Definition.* Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.
9.32    *Factors which may be considered in mitigation.* Mitigating factors include:
(a) absence of a prior disciplinary record;
(b) absence of a dishonest or selfish motive;
(c) personal or emotional problems;

13

(d) timely good faith effort to make restitution or to rectify consequences of misconduct;

(e) full and free disclosure of disciplinary board or cooperative attitude toward proceedings;

(f) inexperience in the practice of law;

(g) character or reputation;

(h) physical disability;

(i) mental disability or chemical dependency including alcoholism or drug abuse when:

    (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;

    (2) the chemical dependency or mental disability caused the misconduct;

    (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

    (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

(j) delay in disciplinary proceedings;

(k) imposition of other penalties or sanctions;

(l) remorse; and

(m) remoteness of prior offenses.

9.4    *Factors Which Are Neither Aggravating nor Mitigating.*

The following factors should not be considered as either aggravating nor mitigating:

(a) forced or compelled restitution;

(b) agreeing to the client's demand for certain improper behavior or result;

(c) withdrawal of complaint against the lawyer;

(d) resignation prior to completion of disciplinary proceedings;

(e) complainant's recommendation as to sanction; and

(f) failure of injured client to complain.

## Recommendation

In consideration of the foregoing findings of fact and conclusions of law, the Review Panel recommends as follows:

1.    That Respondent receive a public censure for violations of Rules 1.3, 1.6 and 1.16, W.R.Prof.Cond.

2.    That, upon issuance of the order of public censure, the foregoing press release may be issued.

14

3. That Respondent be required to pay an administrative fee of $750.00 and costs of $50.00 to the Wyoming State Bar within 10 days of such order.

Dated this 27th day of January, 2023.

                                    Katherine A. Strike, Chair
                                    Review Panel of the Board of Professional
                                    Responsibility
                                    Wyoming State Bar

16